**SO ORDERED.**

**DONE and SIGNED January 17, 2017.**



_____
**JEFFREY P. NORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| Tracy Denise White | § § § | Case Number: 16-10819 |
| Debtor | § | Judge Jeffrey P. Norman |

### ORDER DENYING CONFIRMATION

This matter is before the Court concerning the confirmation of the amended Chapter 13 plan (ECF No. 27) in the above-captioned case. A confirmation hearing was held on January 11, 2017. After considering the pleadings, evidence, testimony, and arguments, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014.2. To the extent any finding of fact is construed to be a conclusion of law, it is adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is adopted as such. The Court reserves the

1

right to make any additional findings and conclusions as may be necessary or as requested by any party. The Court also reserves the right to supplement the findings of fact and conclusions of law.

## PROCEDURAL BACKGROUND

The debtor, Tracy Denise White, filed this Chapter 13 bankruptcy case on May 17, 2016. She and her counsel have diligently prosecuted her case, and the Court held a confirmation hearing on January 11, 2017. The debtor has amended her Chapter 13 plan and schedules numerous times. The most recent amended plan (ECF No. 27) was filed on December 30, 2016, to which the Chapter 13 Trustee has filed an objection (ECF No. 30). In addition to the Trustee's objection, the Court had its own independent concerns regarding confirmation of the debtor's plan. The proposed plan requires a plan payment of $575.00 per month for 59 months, which is permissible as the debtor is below median income and her applicable commitment period is only 36 months.[1] The plan also proposes four additional annual payments of $1,500.00 each, which are due on or before April 15 of each year of the plan.

Pursuant to her schedules, the debtor has been employed for over five years as a certified nurse assistant employed at a nursing home/rehabilitation center in Shreveport. However, the debtor's income is limited.[2] Her net pay from primary employment is only $1,412.44 (ECF No. 29). She also maintains a second job and receives food stamps, which represent an additional $963.60 per month in income. The debtor supports a grandson who is eight months old, and receives a $4,200.00 annual tax credit. The Court assumes this tax credit includes an earned

---

[1] "Applicable commitment period" is defined in 11 U.S.C. § 1325(b)(4), and is 3 years for debtors below median income and 5 years for debtors above median income.

[2] It is the debtor's limited monthly income that requires the debtor to propose annual payments in addition to her regularly scheduled monthly plan payments. The debtor has insufficient income to fund her Chapter 13 plan solely by a monthly payment and must therefore resort to annual payments. Chapter 13 plans funded in this manner are unusual.

2

income credit, but should probably be labeled instead as her yearly tax refund. Her schedules apportion that tax refund as $225.00 in monthly income[3] on line 11 of the Schedule I (ECF No. 29) and as the source of the previously discussed $1,500.00 annual payment. At the confirmation hearing, debtor's counsel and the Chapter 13 Trustee presented their arguments for and against plan confirmation.

## FINDINGS OF FACT

The debtor's budget reflects she maintains a household of two, which consists of her and her eight-month-old grandson. Pursuant to Schedule J (ECF No. 29), her disposable monthly income is $575.00, which matches her monthly plan payment (not including the annual payment from the tax refund). The total amount the debtor proposes to pay over the life of the plan is $41,425.00. After deducting the Chapter 13 Trustee fee, the total available to creditors under the plan will be $38,525.25.[4] The plan proposes attorney fees be paid over ten months with a minimum attorney fee payment of $302.40 per month. Her proposed plan payments (after deduction of the Chapter 13 Trustee fee and the attorney fees) are summarized in a chart at the end of this opinion.

The creditor with the largest claim is Nissan Motor Acceptance ("Nissan"). The debtor has a purchase money security interest in a 2015 Nissan Altima. The Chapter 13 plan proposes to pay Nissan $26,994.55 with 5.5% interest. This corresponds to Nissan's proof of claim (Claim No. 1), which indicates a total debt owed of $26,994.55 and a payment arrears of $555.84 as of the petition filing date. The proof of claim also indicates the vehicle was purchased on June 13, 2015, for $25,950.88; however, due to negative equity in her trade-in vehicle and other factors, the total amount the debtor financed was $29,149.00.

---

[3] The Court does not consider a tax refund to be monthly income.
[4] Chapter 13 plans in this division are currently calculated based on a trustee fee of 7%; however, the actual fee is subject to periodic adjustment and is currently 6.5%. The trustee fee may not exceed 10%.

3

The Chapter 13 Trustee's objection (ECF No. 30) only tangentially relates to the Court's concerns. That objection states the following:

> Debtor's amended plan proposes an additional plan payment in Plan Section 2.3. To the extent the additional payment provision constitutes a special provision, the Trustee requests Court approval of the provision.

The Trustee's request for Court approval of the special provision seems innocuous as first glance. There is nothing in the Bankruptcy Code or Rules disallowing the special provision providing for the additional annual plan payments. However, the Court independently scrutinized the distribution of payments to Nissan and became concerned such payments did not meet the requirements of 11 U.S.C. § 1325(a)(5).

Given the Supreme Court's ruling in *United Student Aid Funds, Inc. v. Espinoza*, 559 U.S. 260 (2010), this Court has an independent duty to review all Chapter 13 plans, irrespective of the Chapter 13 Trustee's objection. An important holding in that case was "whether or not an objection is presently lodged in this case, the Court retains the authority to review [the Chapter 13] plan and deny confirmation if it fails to comply with the confirmation standards of the Code." *Id*. This Court reviews each Chapter 13 case pursuant to its duty as expressed in *Espinoza*.

Some have noted that the requirements contained in 11 U.S.C. § 1325(a)(5) will cause unique problems in certain Chapter 13 cases. *See, e.g.*, Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 448.1, at ¶1, Sec. Rev. July 12, 2007, www.Ch13online.com. There are several cases currently pending in this Court with proposed annual payments such as in the instant case. The cases typically involve debtors with limited monthly income who are attempting to retain a vehicle. Often, it involves a "910 car claim."[5] The

---

[5] 11 U.S.C. § 1325(a) specifies that 11 U.S.C. § 506 does not apply to a debt incurred within the two and one-half year period preceding the petition date if the debt is secured by a purchase money security interest

4

amount to be paid on such a claim typically exceeds the value of the car by a substantial amount.[6] Because the debtors in each of these case have limited monthly income, they propose additional annual payments, usually from tax refunds, in order to fully pay for these negative equity vehicles. While the debtors in these cases clearly need relief, they may likely be better served by requiring secured car lenders "eat steel"[7] and purchasing a car later which does not have such a large amount of negative equity. An additional option would be for the debtor to convert the case to a Chapter 7 and seek redemption funding for the vehicle.[8] Based on this Court's estimation, redemption could save the debtor in this case more than $10,000.00 based purely on the replacement value of her car. This is a substantial sum for a debtor whose primary employment yields less than $1,500.00 per month in net income.

Bankruptcy Code section 1325(a)(5)(B)(iii) states the following: "if— (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts." This equal monthly payment requirement applies to every "allowed secured claim provided for by the plan" when periodic payments are provided. Therefore, in this case, Nissan is entitled to "equal monthly payments." This Court concludes that plans should provide treatment of secured creditors pursuant to the plan meaning of 11 U.S.C. § 1325(a)(5)(B)(iii) as adopted by Congress.

---

in a motor vehicle acquired for the personal use of the debtor. As such, any "910 car claim" is immune to cram-down.

[6] The value of the car that the debtor seeks to retain in this case is valued in the creditor's proof of claim at $17,300.00, and a midline NADA "blue book" value is actually less; yet over the life of her plan, the debtor will pay $29,696.01 in principle and interest to retain the vehicle. The Court questions the rationale of such a plan proposal.

[7] "Eating steel" is a bankruptcy colloquialism referring to surrendering a car (the steel) to a creditor rather than paying the creditor an above fair market value to retain it.

[8] 11 U.S.C § 722, which is known as redemption, allows a debtor to retain secured property such as automobiles, appliances, and furniture, by paying the replacement value of the property in a single lump sum to the creditor within 30 days of the first 341(a) Meeting of Creditors. Numerous companies finance such redemptions.

If the debtor had proposed a level monthly plan payment over a 59 month term without annual payments, then there would be no issue concerning "equal monthly payments." However, given the claims in this case, including the attorney fees and the Nissan claim, the plan is insufficiently funded without the debtor's annual payments of $1,500.00, which total $6,000.00 over the life of the plan.[9] The plan payment of $575.00 monthly, if raised to $676.70, would sufficiently fund the plan without the four additional annual payments. The Court recognizes, however, that this may not be possible given the debtor's limited resources.

The plan only provides adequate protection payments to Nissan for the first ten months of the plan as debtor's attorney fees are paid. Thereafter, an amortization of Nissan's debt over the remaining 49 months of the plan requires an equal monthly payment of $584.06 in months 11-59. This amount is greater, in most months, than the monthly amount available for the Trustee to distribute to creditors. Also, the payments to Nissan in months 11 – 59 are not equal. The monthly payments are reflected in the chart at the end of this opinion.

## CONCLUSIONS OF LAW

The issue is whether the payments proposed to be made to Nissan are sufficient to meet the requirements of 11 U.S.C. § 1325(a)(5)(B)(iii). That Code section provides the following:

> (5) with respect to each allowed secured claim provided for by the plan—
> (iii) if—
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in **equal monthly amounts** [emphasis provided]

Nissan holds an allowed secured claim which is provided for by the plan. Specifically, the plan provides for periodic monthly payments to Nissan. Therefore, 11 U.S.C. § 1325(a)(5)(B)(iii) applies to Nissan's claim in this case.

---

[9] The plan provides for the payment of four claims or classes of claims, attorney fees of $2,800.00, the secured Nissan claim of $26,994.55, a secured claim to Tower Loan of $1,100.00, and a pro rata distribution to unsecured creditors of the remaining plan funds.

6

The requirement that periodic payments be in "equal monthly amounts" means that the amount paid each month on such claims must be the same. The House Report supports this interpretation, stating that § 1325(a)(5)(B) was amended "to require that periodic payments pursuant to a chapter 13 plan with respect to a secured claim be made in equal monthly installments." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 448.1, at ¶10, Sec. Rev. July 12, 2007, www.Ch13online.com.

This Court adopts the well-reasoned holding in *In re DeSardi*, 340 B.R. 790 (Bankr. S.D. Tex. 2006), which involved similar issues as this case. The *DeSardi* opinion was one of the first to analyze the new Code provisions that affected the rights of creditors whose claims are secured by purchase money security interests in vehicles in Chapter 13 cases.[10] This includes 11 U.S.C. 1325(a)(5)(B)(iii), the so-called "equal payment" provision. In *DeSardi*, the bankruptcy court confronted numerous issues that are factually similar to this case. These issues include the priority of adequate protection payments to secured creditors, and when equal monthly payments under 11 U.S.C. § 1325(a)(5)(B)(iii) must begin. The court held that "[t]he equal payment provision does not state that its requirements must be met beginning in month one of the plan." *Id*. The Code also does not state that payments must be equal "as of the effective date of the plan." *Id*. The *DeSardi* court went on to say it "understands [the equal monthly payment] clause to require payments to be equal once they begin, and to continue to be equal until they cease." *Id.*

*DeSardi* is consistent with this division's mandatory form Chapter 13 plan.[11] That form plan provides that adequate protection payments have priority over payments awarded to debtors' counsel. It also provides that equal payments neither need to commence in the first month nor

---

[10] 11 U.S.C. § 1325(a)(5)(B)(iii) was one of the many new provisions adopted by Congress in the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") which was adopted in 2005.
[11] *See* Standing Order Adopting Mandatory Form Chapter 13 Plan Effective August 1, 2015.

7

16-10819 - #34 File 01/17/17 Enter 01/17/17 16:02:22 Main Document Pg 7 of 10

continue until the last month of a Chapter 13 plan. However, the payments must be equal when they do begin. For example, a debtor may provide for equal monthly amounts to be distributed to a particular secured creditor for the first 24 months of a 36 month plan or, if the requirement of providing adequate protection is met, the last 24 months of a 36 month plan.

Applying *DeSardi* to this case means the "equal monthly payments" to Nissan must begin immediately after the full payment of debtor's monthly attorney fees. This occurs in month 11 of the 13 plan. Applying both 11 U.S.C. § 1325(a)(5)(B)(iii) and *DeSardi* to the debtor's proposed plan, the Court concludes that the plan does not meet the confirmation requirements in 11 U.S.C. § 1325.

As previously stated, the Court's financial analysis is contained in the chart at the end of this opinion. For the first ten months of the plan, the Trustee will have $534.75 per month to distribute to creditors after deduction of the Chapter 13 Trustee fee. After payment of attorney fees of $302.40 per month for the first nine months of the plan, and of $78.40 in month ten, the outstanding principle balance to Nissan will be $25,280.21. Amortized over the remaining 49 months of the plan, this amount would require an equal monthly payment of $584.06 per month. As the debtor's proposed monthly plan payment is only $575.00, and only $534.75 after the deduction of the Chapter 13 Trustee's fee, the debtor's monthly plan payment cannot provide "equal monthly payments" to Nissan. The proposed plan does not propose equal monthly payments to Nissan from months 11 to 59. Therefore, the plan cannot be confirmed as the monthly payments to Nissan fluctuate and are not equal.

The Court notes that parts of the *DeSardi* holding have not been adopted by all courts. In fact, a minority of courts explicitly criticize certain holdings in that opinion. However, this Court believes the legal rationale in *DeSardi* is sound. In addition, this opinion is consistent other

opinions prohibiting the use of balloon payments or the use of plans that pay less into the plan during the early months after confirmation and then fund increases during subsequent years in order to fund full payment of secured claims. The rationale in all of these case is that the plan was not proposing the required equal monthly payments to secured creditors. *See, e.g.*, *In re Soppick*, 516 B.R. 733 (Bankr. E.D. Pa. 2014); *In re Spark*, 509 B.R. 728, (Bankr. M.D. Fla. 2014): *In re Wagner*, 342 B.R. 766 (Bankr. E.D. Tenn. 2006); *Ehiorobo v. Talmer Bank & Trust*, 2015 WL 3936936, (E.D. Wis. 2015); *In re Freire*, 2015 WL 4600481 (Bankr. S.D. Fla. 2015); *In re Redden*, 2011 WL 2292312 (Bankr. S.D. Tex. 2011); *In re Correale-Darling*, 2008 WL 4057141 (Bankr. D. Mass. 2008); *In re Luckett*, 2007 WL 3125278, (Bankr. E.D. Wis. 2007).

The following is the chart showing this Court's financial analysis in this case:

White, 16-10819, proposed Chapter 13 distributions

| Payment | Payment Date | Payment Amount | Trustee Fee (7%) | Available After Trustee Fee | Attorney Fee | Available after Attorney Fee and Trustee Fee | Interest to Nissan | Principle to Nissan | Principle Balance |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 6/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $123.73 | $108.62 | $26,886.93 |
| 2 | 7/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $121.41 | $110.94 | $26,775.98 |
| 3 | 8/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $119.08 | $113.27 | $26,662.72 |
| 4 | 9/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $116.75 | $115.60 | $26,547.12 |
| 5 | 10/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $114.42 | $117.93 | $26,429.19 |
| 6 | 11/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $112.09 | $120.26 | $26,308.93 |
| 7 | 12/17/2016 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $109.75 | $122.60 | $26,186.33 |
| 8 | 1/17/2017 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $107.41 | $124.94 | $26,061.40 |
| 9 | 2/17/2017 | $575 | $40.25 | $534.75 | $ 302.40 | $232.35 | $105.08 | $127.27 | $25,934.12 |
| 10 | 3/17/2017 | $575 | $40.25 | $534.75 | $ 78.40 | $456.35 | $102.74 | $353.61 | $25,580.51 |
| 11 | 4/17/2017 | $2,075 | $145.25 | $1,929.75 | | $1,929.75 | $99.53 | $1,830.22 | $23,750.29 |
| 12 | 5/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $90.72 | $444.03 | $23,306.27 |
| 13 | 6/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $87.36 | $447.39 | $22,858.88 |
| 14 | 7/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $84.05 | $450.70 | $22,408.18 |
| 15 | 8/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $80.78 | $453.97 | $21,954.21 |
| 16 | 9/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $77.56 | $457.19 | $21,497.01 |
| 17 | 10/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $74.38 | $460.37 | $21,036.64 |
| 18 | 11/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $71.25 | $463.50 | $20,573.14 |
| 19 | 12/17/2017 | $575 | $40.25 | $534.75 | | $534.75 | $68.17 | $466.58 | $20,106.57 |
| 20 | 1/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $65.15 | $469.60 | $19,636.96 |
| 21 | 2/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $62.17 | $472.58 | $19,164.38 |
| 22 | 3/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $83.46 | $451.29 | $18,713.09 |
| 23 | 4/17/2018 | $2,075 | $145.25 | $1,929.75 | | $1,929.75 | $56.46 | $1,873.29 | $16,839.80 |
| 24 | 5/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $49.54 | $485.21 | $16,354.59 |
| 25 | 6/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $46.88 | $487.87 | $15,866.72 |

9

| # | Date | Total Paid | Total Trustee Fee | Total After Trustee Fee | Total Attorney Fee | Interest Total to Nissan | Principle Total to Nissan | Balance |
|---|---|---|---|---|---|---|---|---|
| 26 | 7/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $44.28 | $490.47 | $15,376.26 |
| 27 | 8/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $41.75 | $493.00 | $14,883.25 |
| 28 | 9/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $39.27 | $495.48 | $14,387.77 |
| 29 | 10/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $36.86 | $497.89 | $13,889.88 |
| 30 | 11/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $34.51 | $500.24 | $13,389.64 |
| 31 | 12/17/2018 | $575 | $40.25 | $534.75 | | $534.75 | $32.23 | $502.52 | $12,887.12 |
| 32 | 1/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $30.02 | $504.73 | $12,382.39 |
| 33 | 2/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $27.88 | $506.87 | $11,875.52 |
| 34 | 3/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $25.80 | $508.95 | $11,366.57 |
| 35 | 4/17/2019 | $2,075 | $145.25 | $1,929.75 | | $1,929.75 | $23.80 | $1,905.95 | $9,460.62 |
| 36 | 5/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $19.06 | $515.69 | $8,944.93 |
| 37 | 6/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $17.31 | $517.44 | $8,427.49 |
| 38 | 7/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $15.63 | $519.12 | $7,908.38 |
| 39 | 8/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $14.04 | $520.71 | $7,387.66 |
| 40 | 9/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $12.51 | $522.24 | $6,865.43 |
| 41 | 10/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $11.07 | $523.68 | $6,341.75 |
| 42 | 11/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $9.71 | $525.04 | $5,816.71 |
| 43 | 12/17/2019 | $575 | $40.25 | $534.75 | | $534.75 | $8.43 | $526.32 | $5,290.39 |
| 44 | 1/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $7.23 | $527.52 | $4,762.88 |
| 45 | 2/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $6.12 | $528.63 | $4,234.25 |
| 46 | 3/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $5.09 | $529.66 | $3,704.59 |
| 47 | 4/17/2020 | $2,075 | $145.25 | $1,929.75 | | $1,929.75 | $4.14 | $1,925.61 | $1,778.98 |
| 48 | 5/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $1.84 | $532.91 | $1,246.07 |
| 49 | 6/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $1.18 | $533.57 | $712.51 |
| 50 | 7/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $0.62 | $534.13 | $178.38 |
| 51 | 8/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | $0.14 | $534.61 | ($356.24) |
| 52 | 9/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 53 | 10/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 54 | 11/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 55 | 12/17/2020 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 56 | 1/17/2021 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 57 | 2/17/2021 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 58 | 3/17/2021 | $575 | $40.25 | $534.75 | | $534.75 | | $534.75 | |
| 59 | 4/17/2021 | $2,075 | $145.25 | $1,929.75 | | $1,929.75 | | $1,929.75 | |
| | | $41,425 | $2,899.75 | $38,525.25 | $2,800.00 | | $2,700.46 | $26,995.55 | |

Nissan is fully paid at the end of month 51, the distribution shown as a negative numbers is to be distributed to the debtor's other creditors.

**ACCORDINGLY, IT IS ORDERED** that confirmation of the debtor's amended Chapter 13 plan is denied.

**IT IS FURTHER ORDERED** that the debtor shall file an amended Chapter 13 plan within 14 days of date of the entry of this order.

**IT IS FURTHER ORDERED** that, should the debtor fail file an amended plan, the Chapter 13 Trustee may upload an order of dismissal without prejudice.

###

10